Eleni Melekou
Pardalis & Nohavicka, LLP
950 Third Avenue, 11th Floor
New York, NY 10022
Telephone: (212) 213-8511
Facsimile: (718) 777-0599
*Attorneys for Plaintiff Carnegie Hospitality, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

CARNEGIE HOSPITALITY, LLC,           )
                                     )
                    *Plaintiff*,     )
                                     )      Civil Case No. 1:25-cv-4869
         -v-                         )
                                     )
PARKEROSE LLC and FINALEE LLC,       )      **COMPLAINT**
                                     )
                    *Defendants.*    )      **JURY TRIAL DEMANDED**

---------------------------------------------------------

Plaintiff, Carnegie Hospitality LLC ("Plaintiff"), a New Jersey limited liability company, by and through its undersigned attorneys, PARDALIS & NOHAVICKA, LLP, complains and alleges against Defendants Parkerose LLC and Finalee LLC (each, a "Defendant", and collectively, the "Defendants"), as follows:

### NATURE OF ACTION

1.      Plaintiff brings this action pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking, *inter alia*, a judicial declaration that its use and registration of its word mark "CARNEGIE DINER & CAFE" (U.S. Reg. No. 6,632,349) (the "Mark") does not infringe any valid trademark rights held by Defendant, that the Mark does not overlap and is not confusingly similar to any valid trademarks registered by

Defendants, that the Mark does not falsely suggest any connection with Defendants, and Plaintiff has not engaged in any unlawful conduct under the Lanham Act, 15 U.S.C. § 1051 et seq.

2.    This action arises from Defendant's allegations and petition for cancellation filed before the Trademark Trial and Appeal Board (TTAB) (Proceeding No. 92088025) against Plaintiff concerning Plaintiff's use and registration of the Mark. This action further seeks a Declaratory Judgment of Non-Infringement, a Declaratory Judgment of Non-Violation of the Parties' Agreement by Plaintiff or any person or entity acting on behalf of or with Plaintiff, and relief for the Defendants' Breaches of Contract and the Implied Covenant of Good Faith and Fair Dealing.

## THE PARTIES

3.    Plaintiff Carnegie Hospitality LLC is a New Jersey Limited Liability Company, formed and existing under the laws of the State of New Jersey, with a principal office located at 47 Beach Street, Jersey City, NJ 07307.

4.    Carnegie Hospitality LLC owns the intellectual property rights, including registered trademarks, of the Carnegie Diner & Cafe brand of restaurants.

5.    The first location of the Carnegie Diner & Cafe brand of restaurants opened in 2019 at 205 West 57th Street, New York, NY 10019.

6.    Thereafter, additional Carnegie Diner & Cafe locations opened in New York City, New Jersey and Virginia.

7.    Upon information and belief, Defendant Parkerose LLC is resident in the Southern District of New York as a New York Limited Liability Company, formed and existing in New York County, under the laws of the State of New York, with a service of process address provided by Parkerose LLC to the New York Department of State as a mail drop at the UPS Store at 2218 Broadway, #264, New York, NY 10024.

2

8.      Upon information and belief, Defendant Finalee LLC is resident in the Southern District of New York as a New York Limited Liability Company, formed and existing in New York County, under the laws of the State of New York, with a service of process address provided by Finalee LLC to the New York Department of State as a mail drop at the UPS Store at 2218 Broadway, #264, New York, NY 10024.

9.      The Defendants hold themselves out as selling "Carnegie Deli" branded "kosher-style" meats and deserts in third-party stores, by mail order, and at concession stands located inside Madison Square Garden, open during certain select ticketed events, as well as at pop-up concession stands at the U.S. Open tennis tournament and the Saratoga racetrack.

10.     The Defendants' principal brick and mortar deli location that was open to the general public closed down permanently in 2016.

## THE PLAINTIFF AND ITS MARK

11.     Since at least as early as December 29, 2019, Carnegie Diner & Cafe has been continuously and exclusively using the Mark in connection with restaurant services, offered through its diner-cafe style restaurant locations, in both word format and in stylized form, initially in New York, and thereafter in New Jersey and Virginia.

12.     Carnegie Diner & Cafe's first restaurant location at 205 West 57th Street, New York. NY 10019 is within the Southern District of New York.

13.     Through Plaintiff's efforts, including continuous and extensive use of its Mark, the "Carnegie Diner & Cafe" brand has come to be associated with a high-quality restaurant, diner and cafe.

14.      Through Plaintiff's efforts, including continuous and extensive use of its Mark, the Mark has become exclusively associated with Carnegie Diner & Cafe.

3

## THE DEFENDANTS' ALLEGED DISPUTE
## WAS FORMALLY RESOLVED BY AGREEMENT

15.    Defendants allege that they have several registrations for marks incorporating the word "Carnegie", followed by the word "Deli" and/or other elements. Among such marks, are certain logos consisting of the wording "Carnegie Deli" in red font against a white background (the "Defendant's Mark).

16.    When still operating as a brick-and-mortar business, "Carnegie Deli" did not hold itself out as a diner.

17.    When still operating as a brick-and-mortar business, "Carnegie Deli" did not hold itself out as a cafe.

18.    Despite the distinctive nature of Carnegie Diner & Cafe's business associated with its Mark, the absence of reasonable actual consumer confusion, and the clear differences in the commercial impressions created by Plaintiff's and Defendants' respective marks, Defendants nevertheless had previously objected to Carnegie Diner & Cafe's use of logos featuring a red background (the "Old Logos").

19.    To address such objections and avoid escalation of any dispute, Carnegie Diner & Cafe entered into a Settlement Agreement with the Defendants, dated January 15, 2021 (the "Agreement"), governing the co-existence terms of the parties, and providing, *inter alia*, that Carnegie Diner & Cafe would discontinue use of the Old Logos. **Exhibit 1**.

20.    The Agreement further provided that Carnegie Diner & Cafe is entitled to use and apply to the United States Patent and Trademark Office (USPTO) for  federal registration of the new logos, inclusive of the phrase "Carnegie Diner & Cafe" (the "New Carnegie Diner Logos"), so long as on or before January 31, 2021, the New Carnegie Diner Logos would not use (i) the color

4

combination of red and white; (ii)  the color combination of red and yellow; (iii)  a stylized, large "C"; and (iv)  the "Carnegie Deli" font.

21.    Apart from agreeing that Carnegie Diner & Cafe can and will use the phrase Carnegie Diner & Cafe in its Trademark, the Agreement does not include any restrictions, limitations, requirements or even references to word marks that were then, now or may be used in connection with the Carnegie Diner & Cafe brand of restaurants.

22.    The parties expressly acknowledged and agreed that, provided Carnegie Diner & Cafe's New Carnegie Diner Logos complied with the agreement's specific requirements, no likelihood of consumer confusion could arise between the parties' respective marks.

23.    By their agreement, the parties agreed that

 (a) the respective marks are sufficiently distinct in appearance.

 (b) the marks create different commercial impressions, based on differences in font, color, and the inclusion of the additional wording "Deli" on one hand and "Diner" and "Café" on the other;

 (c) the marks are logo marks, which are inherently more distinctive than word marks, with consumers perceiving each mark as a whole; and,

 (d) the goods and services offered under the respective marks differ in nature, intended purpose, and price point, with the additional wording in each mark further distinguishing a café/diner restaurant from a deli offering specialty meats.

24.    In compliance with Carnegie Diner & Cafe's obligations under the agreement, it was ensured that the New Carnegie Diner Logos did **not** (i) use the color combination of red and white; (ii) use the color combination of red and yellow; (iii) feature a stylized, large "C"; and (iv) incorporate the "Carnegie Deli" font.

25.     The New Carnegie Diner Logo, as depicted here, is fully compliant with the parties Agreement:



26.     Likewise, compared side by side, consistent with the Agreement, the parties' respective logos look nothing alike:

 

27.     Finally, the parties recognized that the Carnegie Deli is a distinct business fundamentally different from the business operated as Carnegie Diner & Cafe.

28.     Carnegie Diner & Cafe fully complied with all obligations under the agreement, further eliminating any possibility of consumer confusion.

29.     Carnegie Diner & Cafe terminated use of any logo containing the red background as complained of by the Defendants, and has not used such a logo since the parties settled the Defendants' putative concerns by way of the Agreement.

30.     The Plaintiff has not used any logo containing the red background as complained of by the Defendants.

31.     Beyond their divergent menus and restaurant themes, the Carnegie Diner & Cafe has always looked different than the "Carnegie Deli" did when it actually maintained a full-service deli restaurant.

32.     Images, obtained from the Defendants' website,[1] show the branding of the Carnegie Deli restaurants:

     

and the branding at the "Carnegie Deli" named concession stands at Madison Square Garden:[2]



33.     Moreover, the branding of the "Carnegie Deli" branded outpost at the Saratoga racetrack is available online as well:[3]

     

---

[1] *See* Carnegie Deli, About Us, *available a*t https://carnegiedeli.com/pages/about-us, *last accessed* May 29, 2025.

[2] *See* Madison Square Garden, *available at* https://carnegiedeli.com/pages/madison-square-garden, *last accessed* May 29, 2025.

[3] *See* Carnegie Deli, *available at* https://mindtrip.ai/restaurant/saratoga-springs-new-york/carnegie-deli/re-5xpYEgvE, *last accessed* June 5, 2025.

34.     The Carnegie Diner & Cafe branding looks nothing like Defendants' branding.

35.     Carnegie Diner & Cafe's name is different than Defendants' brand and business names.

36.     Carnegie Diner & Cafe's logo is different than any logo used by Defendants.

37.     The font used by Carnegie Diner & Cafe in its logo is different than any font used by Defendants in their logo.

38.     The appearance of the Carnegie Diner & Cafe locations in New York City is different than the appearance Defendants ever used:

 

 

39.     The appearance of the Carnegie Diner & Cafe locations in New Jersey and Virginia is different than the appearance Defendants have ever used:

 

 

40.     There is no resemblance between the architecture or branding used by Carnegie Diner & Cafe as relates to Defendants' business.

41.     The Agreement specifically provides that there is no geographic limitation to any parties' use of its marks, such that: "[n]othing contained in this Agreement shall be considered as a geographic limitation on the Parties' rights, use of the marks, and future business endeavors." Ex. 1 at ¶ 7.

42.     Plaintiff continues to comply with its obligations under the Agreement, further eliminating any possibility of consumer confusion.

43.     On February 1, 2022, Plaintiff obtained a valid federal registration for the Mark in connection with restaurant and café services. (Registration No. 6632349). **Exhibit 2**.

44.     Since executing the Agreement, and notwithstanding compliance by and on behalf of Carnegie Diner & Cafe, together with repeated good faith efforts to resolve even non-issues, Defendants have taken it upon themselves to manufacture a dispute where no valid one exists.

45.     Rather than honoring the terms of the agreement they freely negotiated, Defendants have launched a series of baseless accusations— in an effort to undo the very coexistence they negotiated and agreed to.

46.     The Agreement specifically provides, in pertinent part, that by complying with its

agreed obligation to modify its own logo,

> Carnegie Diner shall be entitled to apply for registration and register the
> New Carnegie Diner Logos with the United States Patent and Trademark
> Office (USPTO). The Carnegie Deli Entities or any affiliated entities or
> parties shall not object to such registration and shall not file any Opposition
> or Cancellation proceeding against the New Carnegie Diner Logos before
> the USPTO, TTAB or any competent court, subject to the parties'
> compliance with this Agreement. The applications for registration of the
> New Carnegie Diner Logos shall not cover the goods covered by the
> Carnegie Deli Marks under Registration Nos. 5598690, 5598676, and
> 5609727, but may include, inter alia, the following: "Restaurant Services",
> in International Class 043.

Ex. 1 at ¶ 1(c).

47.     The New Carnegie Diner Logos, as specifically agreed to by the Plaintiff, include

the phrase "Carnegie Diner & Cafe."

48.     The Agreement further provides that it "shall inure to the benefit of and be binding

upon the affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns of each

Party." Ex. 1 at ¶ 9.

49.     Plaintiff is an assignee, affiliate and beneficiary under the Agreement.

50.     By the terms of paragraph 9, the agreement inures to Plaintiff's benefit.

51.     Despite Plaintiff's compliance with the Agreement by and with Carnegie Diner &

Cafe, on April 7, 2025, Defendant filed a petition for cancellation of the Mark before the TTAB (the

"Petition"), seeking to cancel Plaintiff's Mark on multiple grounds. **Exhibit 3**.

52.     The Agreement prohibited the Defendants from filing a petition for cancellation.

53.     By filing a petition for cancellation, the Defendants materially breached the

Agreement.

54.     Through their communications and Petition, Defendants purport to assert exclusive rights to the word "Carnegie" generally and with respect to a restaurant.

55.     Through their communications and Petition, Defendants seek to prevent Plaintiff from conducting its business, including as per the Agreement.

56.     As a result of Defendants' actions, Plaintiff is bringing the present action for a judicial declaration of its rights in the Mark, the validity of the Mark, the absence of infringement on Defendants' marks and the absence of breach of the Agreement on Plaintiff's part, as well as for breach of the implied covenant of good faith and fair dealing.

## JURISDICTION AND VENUE
### Federal Question Jurisdiction and Supplemental Jurisdiction

57.     This action arises under the Lanham Act, 15 U.S.C. § 1051, et seq., and the statutory and common laws of the State of New York. This Court has subject matter jurisdiction over this action over Plaintiff's federal claims pursuant to and in accordance with 28 U.S.C. § 1331 and 1338(a).

58.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to and in accordance with 28 U.S.C. §§ 1367(a), because those state and common law claims are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

59.     Personal jurisdiction exists over Defendants in this judicial district pursuant to Fed. R. Civ. P. 4 and NY C.P.L.R. 301, since the Defendants are each resident of the State of New York, as each is a New York Domestic Limited Liability Company, organized in and maintaining their principal offices in the State, City and County of New York.

60.     Additionally, jurisdiction is proper over the Defendants as they conduct, solicit and/or transact business within this judicial district in New York, derive substantial revenue from the sale, distribution and/or manufacture of goods or services within this judicial district, and have otherwise made or established constitutionally sufficient contacts in this judicial district to permit this Court's exercise of personal jurisdiction.

61.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2), because each of the Defendants resides in the County of New York, within the Southern District of New York, and both defendants are residents of the State of New York.

62.     Venue is also proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims raised in this complaint occurred within this judicial district.

<u>**FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**</u>

**The Parties' Background**

63.     Plaintiff is the owner of the "Carnegie Diner & Cafe" trademark used by the "Carnegie Diner & Café" branded restaurants.

64.     There are Carnegie Diner & Cafe branded brick and mortar restaurant locations in New York City, New Jersey and Virginia.

65.     Each of the Carnegie Diner & Cafe locations are full service sit-down restaurants (with take-out available), offering a large and diverse menu, including all-day breakfast, brunch, lunch, pre-theater, and dinner, as well as soft drinks, milkshakes and alcoholic beverages.

66.     The Carnegie Diner & Cafe's menu includes, but is not centered around, sandwiches. The menu includes a wide selection of other options, including pancakes, omelets, French toast, pasta, burgers, and salads.

67.     The Carnegie Diner & Cafe branded restaurants focus on a diner-cafe style experience, both by reference to their menu, as well as décor and ambiance.

68.     Over time, the Carnegie Diner & Cafe branded restaurants have increased in their success and gained in popularity.

69.     The Carnegie Diner & Cafe branded restaurants have received positive reviews, press coverage and praise.

70.     Plaintiff continues to invest substantial resources in support of its brand.

71.     Since the inception and establishment of the Carnegie Diner & Cafe branded restaurant business, the restaurants have always been operated under the name "Carnegie Diner & Café".

72.     Since the inception and establishment of the Carnegie Diner & Cafe branded restaurant business, it has always focused on and operated as brick-and-mortar restaurant locations and associated hospitality services.

73.      The Defendants claim to own different "Carnegie Deli" marks, associated with restaurant, delicatessen, and catering services, as well as with various food products including corned beef, pastrami, salami, prepared beef, turkey, mustard, bakery desserts, rugelach, cheesecakes, cookies, knishes, chocolate confections and other products including candles and dog treats.

74.     Upon information and belief, the "Carnegie Deli," as a brick-and-mortar restaurant location, was largely owned and operated by Leo Steiner who passed away in 1987, and Milton Parker, who passed away in or about 2009.

75.     The midtown-Manhattan brick and mortar principal "Carnegie Deli" location permanently closed on December 31, 2016.

76.     Defendants are limited liability companies established by relatives of Milton Parker, as ostensible owners of the "Carnegie Deli" brand.

77.     Upon information and belief, while the Defendants' brand name occasionally maintains a limited presence through a concession stands at Madison Square Garden during certain events and occasional pop-up locations at the Saratoga racetrack and the U.S. Open tennis tournament, there is no longer a traditional restaurant or deli operated under the "Carnegie Deli" name.

78.     Upon information and belief, the Defendants do not own or operate a brick and mortar sit down restaurant operating as "Carnegie Deli" anywhere.

79.     Upon information and belief, the Defendants do not own or operate a full-service restaurant operating as "Carnegie Deli" anywhere.

80.     Upon information and belief, the Defendants do not own or operate a full-service restaurant operating as as a diner-cafe anywhere.

81.     Instead, upon information and belief, Defendants have shifted their business to selling food products through retail outlets such as supermarkets.

82.     At all relevant times, the "Carnegie Deli" full-service restaurant held itself out as a delicatessen—not a diner or cafe.

83.     Defendants are now primarily retailers of packaged food items.

84.     Defendants do not operate a brick-and-mortar delicatessen.

85.     Defendants do not operate a diner.

86.     Defendants do not operate a cafe.

87.     All of the Defendants concessions for the sale of limited offerings of prepared food are located in New York.

**The Settlement Agreement**

88.    On January 15, 2021, the Parties entered into a Settlement Agreement to ensure that no consumer confusion will occur.

89.    As a beneficiary of the Agreement, Plaintiff has complied with its terms and conditions. The requirements set forth in the Agreement for the New Carnegie Diner Logos are that such logos: not use the (i) color combination of red and white, (ii) color combination of red and yellow, (iii) stylized, large C, and (iv) the "Carnegie Deli" font.

90.    While the Carnegie Diner & Cafe always disagreed with Defendants' claims that the Old Carnegie Diner logo, or anything about Carnegie Diner & Cafe, caused any reasonable risk of confusion, in the very best of good faith,

91.    Carnegie Diner & Cafe changed its logos in line with the Agreement.

92.    The Agreement in no way bars or limits Plaintiff's use of the words Carnegie Diner & Cafe.

93.    By the Agreement, the Defendants consented to use of the phrase "Carnegie Diner & Cafe" in branding by Carnegie Diner & Cafe and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns. Ex.1 at ¶ 9.

94.    The Defendants, together with their affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns of bound by the Agreement. Ex.1 at ¶ 9.

95.    The Defendants' main objection to the Old Logos was their color combination, as Defendants claimed that it visually resembled that of Defendants' logos.

96.    Plainly, the requirements agreed to were designed to avoid any overlapping color combinations between the parties' respective logos.

97.    The Agreement included other obligations regarding marketing, advertisement and disclaimers.

98.    Plaintiff has fully complied with the terms and obligations of the Agreement.

99.    The Defendants have breached terms and obligations under the Agreement.

100.    The Agreement provides consent by the Defendants for Plaintiff to use the phrase "Carnegie Diner & Cafe," its own trade name, in the agreed upon logo.

101.    The Agreement contains no restrictions whatsoever on Carnegie Diner & Cafe, and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns, including the Plaintiff's use, application for, or registration of any standard character or word marks.

102.    At no point does the Agreement impose any limitations on Carnegie Diner & Cafe, and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns, including the Plaintiff's rights to pursue protection for its marks in standard character form.

103.    Apart from the restrictions on color combinations and certain fonts, Defendants did not seek to place any restriction as to the use or registration of the Plaintiff's Mark, including as a standard character mark, in the Agreement.

104.    By agreeing to the use of the New Carnegie Diner Logos, Defendants expressly acknowledged and accepted Plaintiff's use of the Plaintiff's trade name, Carnegie Diner & Cafe, in connection with its business.

**Defendants' bad faith petition for cancellation of Plaintiff's Mark.**

105.    On April 7, 2025, Defendants filed their Petition for Cancellation of the Mark with TTAB, alleging likelihood of confusion, dilution, false suggestion of connection with an institution, breach of the Agreement, fraud on the United States Patent and Trademark Office and that the registration for the Mark is void *ab initio*.

106.    Plaintiff rejects and denies all adverse allegations in the Petition.

107.    Plaintiff has never suggested a connection to Defendants, or any business operated by them.

108.    Plaintiff is not engaged in the business of marketing or selling kosher-style food products.

109.    The Carnegie Diner & Cafe, and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns, including the Plaintiff, do not focus their business on selling food products through retail outlets such as supermarkets and via mail order.

110.    In their Petition, Defendants allege that Plaintiff's Mark violates the Agreement because it is a standard character mark not limited to any specific color, stylization, or font.

111.    However, the Agreement contains no prohibition against Carnegie Diner & Cafe, and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns, including the Plaintiff's use or registration of standard character marks.

112.    Defendants seek to manufacture claims by mischaracterizing the plain terms of the Agreement.

113.    Defendants' fabrication of a violation of the Agreement is baseless, unfounded and abusive.

114.    Defendants deliberately chose not to seek or include any restriction in the Agreement prohibiting Carnegie Diner & Cafe, and its affiliates, subsidiaries, heirs, representatives, parents, successors, and assigns, including the Plaintiff's use, application for, or registration of a standard character mark.

115.    Defendants deliberately chose not to seek or include any restriction in the Agreement prohibiting Carnegie Diner & Cafe's geographic and territorial expansion. Rather, by the terms of the Agreement, such geographic and territorial expansion is expressly permitted. Ex 1 at ¶ 7.

116.    The Defendants are bound by the Agreement, inclusive of its terms they negotiated and executed.

117.    Despite registering the Mark in standard characters, which Plaintiff had every right to do, Plaintiff has not used the Mark in any color combination or font that violates the Agreement.

118.    Plaintiff has no intention of using its Mark in any color combination or font that violates the Agreement.

119.    Carnegie Diner & Cafe entered into the Agreement in good faith, with intentions on adhering to its terms, and the Plaintiff has continued to abide by the Agreement.

120.    The Agreement expressly acknowledges that the respective marks are not confusingly similar.

121.    Although both marks contain the word "Carnegie," they differ entirely in their overall look, sound, connotation, and commercial impression.

122.    None of people owning the Defendants entities are named Carnegie.

123.    As to the respective goods and services covered by the marks, the majority of goods covered by Defendants' marks are food products, such as mustard, pastrami and salami, as well as items such as scented candles and edible dog treats. Only one of Defendants' marks cited in the Petition covers "Restaurant, delicatessen and catering services", namely the mark under U.S. Registration Number 3691593.

124.    Following the permanent closure of their Midtown Manhattan location in 2016, Defendants abandoned their traditional deli operations and shifted their business model to focus almost exclusively on the retail sale of packaged delicatessen food items.

125.    Carnegie Diner & Cafe, however, are full-service diner and cafe restaurants.

126.    Carnegie Diner & Cafe operates a different business model than the Defendants.

127.    Carnegie Diner & Cafe's goods and services are largely different than the Defendants.

128.    Defendants are acting in bad faith.

129.    Defendants are attempting to monopolize the use of the word "Carnegie."

130.    Defendants do not have exclusive rights to the word "Carnegie."

131.    By the Agreement, the Defendants consented to trademark registration of the Carnegie Diner logo using the phrase Carnegie Diner & Café.

132.    By the Agreement, the Defendants consented to the Carnegie Diner & Cafe trademark registration.

133.    The Defendants did not oppose Plaintiff's registration of the Mark.

134.    Upon filing its application for the registration of the Mark, Plaintiff voluntarily submitted a copy of the Agreement for the USPTO examining attorney's consideration.

135.    The USPTO examining attorney allowed the registration of the Mark.

136.    At no point did the USPTO issue an office action blocking the registration of the Mark.

137.    The USPTO registered the Mark.

138. Defendants' choice to bring a petition for cancellation of the Mark more than three years after its registration, despite engaging in back-and-forth communications with Plaintiff throughout this entire period only with respect to the New Logos and Plaintiff's marketing obligations under the Agreement, and without raising any allegation to use or registration of word marks or the Mark, further demonstrates their bad faith intentions in bringing the Petition.

**The May 30, 2025 Letter**

139. On May 30, 2025, Defendants sent a putative Notice of Infringement to Plaintiff. **Exhibit 4.**

140. Defendants alleged Plaintiff violated the Agreement by using the words "Hospitality" and "Catering" after the word "Carnegie."

141. Defendants do not hold any registration for the phrases "Carnegie Hospitality" and "Carnegie Catering" with the USPTO.

142. Defendants do not hold any registration for the word "Hospitality" with the USPTO.

143. Defendants do not hold any registration for the word "Catering" with the USPTO.

144. The Agreement does not contain any restriction as to the Plaintiff's use of the word "Carnegie" with other word combinations.

145. Defendants do not use "Carnegie Hospitality" and "Carnegie Catering" as marks.

146. If Plaintiff's used or uses the phrases "Carnegie Hospitality" and "Carnegie Catering", it would not infringe upon Defendants' putative intellectual property rights.

147. Defendants do not have an exclusive right to sell pastrami and pastrami sandwiches anywhere, including in the United States.

148.    As part of the Agreement, Defendants sought, and Carnegie Diner & Cafe agreed to changes in its menu.

149.    Carnegie Diner & Cafe complied with the agreed upon modifications, revisions and restrictions to the menu.

150.    Carnegie Diner & Cafe continues to comply with the agreed upon modifications, revisions and restrictions to the menu.

151.    The Agreement does not include any restriction that the Carnegie Diner & Cafe restaurants cannot sell Pastrami based sandwiches and dishes.

152.    The Agreement does not contain any restriction as to the number of pastrami-based or corned beef-based dishes and items in in the Carnegie Diner & Cafe restaurants' menus.

153.    The Agreement does not contain any restriction as to the inclusion of pictures and images showing and depicting any types of food products, including pastrami and/or pastrami sandwiches in the Carnegie Diner & Cafe restaurants' menus or merchandise.

154.    The Agreement does not include any restrictions or limitation of in the Carnegie Diner & Cafe restaurants offering and/or selling cheesecakes.

155.    The Agreement does not contain any restrictions or limitations for the use of images and photographs by the Carnegie Diner & Cafe that depict New York style cheesecakes or cheesecakes in general.

156.    Defendants do not own any copyright on the images, photographs, paintings or graphic designs showing pastrami, pastrami sandwiches, cheesecakes, New York style cheesecakes or any other items depicted in the Carnegie Diner & Cafe restaurants' menus.

157.    Defendants do not have exclusivity in the marketing or sale of cheesecakes.

158.    Defendants did not invent pastrami.

159.   Defendants did not invent corned beef.

160.   Defendants did not invent rye bread.

161.   Defendants did not invent mustard.

162.   Defendants did not invent cheesecake.

163.   Defendants do not own the intellectual property rights to pastrami.

164.   Defendants do not own the intellectual property rights to corned beef.

165.   Defendants do not own the intellectual property rights to rye bread.

166.   Defendants do not own the intellectual property rights to mustard.

167.   Defendants did not invent the sandwich.

168.   Defendants do not own the intellectual property rights to sandwiches.

169.   The Plaintiff does not know and has not used any recipe associated with the Defendants.

170.   Many restaurants sell pastrami sandwiches, corned beef sandwiches and cheesecake.

171.   Many restaurants holding themselves out as diners sell pastrami sandwiches, corned beef sandwiches and cheesecake.

172.   The Agreement does not impose any geographic or territorial limitation as to the application of the Agreement or Plaintiff's rights under the Agreement.

173.   The Agreement does not impose any geographic or territorial restriction or constraints upon Plaintiff's business expansion in the State of New York, nationally and/or internationally.

174.   Defendants do not own any intellectual property rights in the word "famous."

175.   Defendants do not own any intellectual property rights in the word "landmark."

176.    A search of the records of the New York City Landmarks Preservation Commission confirms that the location of the principal brick and mortar "Carnegie Deli" location at 854 7th Avenue, New York, NY 10019, is not designated as a landmark.



177.    Plaintiff complied with the disclaimer requirements explicitly set forth in the Agreement.

## FIRST CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement

178.    Plaintiff hereby incorporates by reference and realleges each and every allegation above.

179.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's use of the Mark.

180.    In their TTAB Petition, Defendants alleged grounds for cancellation including likelihood of confusion, dilution, false suggestion of connection with an institution, breach of the Agreement, fraud on the United States Patent and Trademark Office and that the registration for the Mark is void *ab initio*.

181.    None of the Defendants' alleged grounds for cancellation is in any way meritorious.

182.    Plaintiff's Mark is not confusingly similar to Defendants' marks.

183.    Plaintiff's registration and use of its Mark and any of its variations does not infringe on Defendants' marks under 15 U.S.C. § 1114.

184.    Plaintiff's registration and use of its Mark and any of its variations does not unfairly compete with Defendants.

185.    Plaintiff's registration and use of its Mark and any of its variations is not a false designation of origin under 15 U.S.C. § 1125(a).

186.    Plaintiff's use and registration of its Mark and any of its variations does not dilute the Defendants' marks under 15 U.S.C. § 1125(c).

187.    Plaintiff properly sought and obtained registration of the Mark with the USPTO.

188.    There was no fraud in Plaintiff's application for or registration of its Mark.

189.    Plaintiff informed the USPTO of the existence and terms of the Agreement by providing a copy of the Agreement to the USPTO as part of the Plaintiff's application for registration of its Mark.

190.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that: (a) the Mark is owned exclusively by Plaintiff, (b) Plaintiff has exclusive rights in the Mark in connection with the services covered by its registration, (c) Plaintiff's use and registration of the Mark does not infringe Defendant's trademark rights and is not likely to cause confusion with any of Defendants' marks under the Lanham Act. (d) there was no fraud in Plaintiff's application with the USPTO for the registration of the Mark, (e) no likelihood of confusion with Defendants' marks arises through use and registration of the Mark, (f) the Mark does not cause dilution of Defendants' alleged marks, (g) the Mark does not make any false suggestion or connection with Defendants, (h) Plaintiff has not and is not infringing Defendants' intellectual property rights, (i) Plaintiff's sales

are not connected with Defendants' alleged intellectual property, if any, (j) registration of the Mark

is in full force and effect and neither is or was void *ab initio*, and (k) Plaintiff is not in breach of the

Agreement with Defendants due to Plaintiff's use and registration for the Mark.

191.    Given Defendants' egregious conduct, Plaintiff is also entitled to collect punitive

damages based on Defendants' bad faith activities.

## SECOND CAUSE OF ACTION
### Declaratory Judgment of Non-Infringement

192.    Plaintiff hereby incorporates by reference and realleges each and every allegation

above.

193.    An actual and justiciable controversy exists between Plaintiff and Defendants

concerning Plaintiff's use of the Mark.

194.    In their May 30, 2025 letter, Defendants alleged that Plaintiff's use of the word

"Carnegie" with the words "Hospitality" and "Catering" constitute trademark infringement,

trademark dilution, false designation of origin, unfair competition, and deceptive trade practices.

195.    Plaintiff's use of its Mark in combination with the words "Hospitality" and

"Carnegie" is not confusingly similar to Defendants' marks.

196.    Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie"

does not infringe on Defendants' marks under 15 U.S.C. § 1114.

197.    Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie"

does not unfairly compete with Defendants.

198.    Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie"

is not a false designation of origin under 15 U.S.C. § 1125(a).

199.    Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie" does not dilute the Defendants' marks under 15 U.S.C. § 1125(c).

200.    Plaintiff's use of the words "famous" and "landmark" does not infringe on Defendants' marks under 15 U.S.C. § 1114.

201.    Plaintiff's use of the words "famous" and "landmark" does not unfairly compete with Defendants.

202.    Plaintiff's use of the words "famous" and "landmark" marks is not a false designation of origin under 15 U.S.C. § 1125(a).

203.    Plaintiff's use of the words "famous" and "landmark" does not dilute the Defendants' marks under 15 U.S.C. § 1125(c).

204.    Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes does not infringe on Defendants' marks under 15 U.S.C. § 1114.

205.    Plaintiff's use of images of pastrami, pastrami and corned beef sandwiches and cheesecakes does not unfairly compete with Defendants.

206.    Plaintiff's use of images of pastrami, pastrami and corned beef sandwiches and cheesecakes is not a false designation of origin under 15 U.S.C. § 1125(a).

207.    Plaintiff's use of images of pastrami, pastrami and corned beef sandwiches and cheesecakes does not dilute the Defendants' marks under 15 U.S.C. § 1125(c).

208.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that: (a) Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie" does not infringe Defendants' trademark rights and is not likely to cause confusion with any of Defendants' marks under the Lanham Act. (b) Plaintiff's use of the words "famous" and "landmark" does not infringe on Defendants' marks under 15 U.S.C. § 1114; (c) Plaintiff's use of images of pastrami,

pastrami, corned beef sandwiches and cheesecakes does not infringe on Defendants' marks under 15 U.S.C. § 1114, (d) Defendants do not have exclusive rights on selling and/or offering for sale pastrami, pastrami, corned beef sandwiches and cheesecakes; (e) no likelihood of confusion with Defendants' marks arises through Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes; (f) Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes do not cause dilution of Defendants' alleged marks, (g) Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes do not make any false suggestion or connection with Defendants, (h) Plaintiff has not and is not infringing Defendants' intellectual property rights, (i) Plaintiff's sales are not connected with Defendants' alleged intellectual property, if any, (j) Defendants' do not have exclusive rights on the name "Carnegie" and (k) Plaintiff is not in breach of the Agreement with Defendants due to Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes.

209.    Given Defendants' egregious conduct, Plaintiff is also entitled to collect punitive damages based on Defendants' bad faith activities.

**THIRD CAUSE OF ACTION**
**Declaratory Judgment of Non-Violation of the Parties' Agreement**

210.    Plaintiff hereby incorporates by reference and realleges each and every allegation above.

211.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's compliance with the Parties' Agreement.

212.    Defendants by filing the Petition for the Cancellation of Plaintiff's Mark and their May 30, 2025, letter assert that Plaintiff's registration of the Mark, Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes had violated the terms of the Agreement.

213.    In their May 30, 2025, Defendants allege that Plaintiff failed to include disclaimers, and/or compliant disclaimers, expanded their brand, advertised its restaurant using photos of pastrami sandwiches, and the word famous.

214.    The Agreement does not contain any restrictions as to Plaintiff's registration and use of the word Mark, Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes.

215.    The Agreement has neither geographic nor territorial restrictions and does not impose any limit as to the number of affiliated restaurants where Plaintiff can use the Mark and Carnegie Diner & Café brand and marks.

216.    Plaintiff placed the agreed-upon disclaimer in the bio or about section of its Instagram, X (formerly Twitter) and Facebook account pursuant to the Agreement.

217.    Plaintiff placed the agreed-upon disclaimer in its website and printed menus pursuant to the terms of the Agreement.

218.    The Agreement does not contain any limitation as to the number of pastrami, corned beef and cheesecake items Plaintiff can include in its restaurant menus.

219.    The Agreement does not contain any limitations as to use of images, photographs and graphic designs depicting pastrami, pastrami sandwiches, corned beef sandwiches and cheesecakes in Plaintiff's restaurant menus.

220.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that Plaintiff's use of the words "Hospitality" and "Catering" with the word "Carnegie," Plaintiff's use of the words "famous" and "landmark," and Plaintiff's use of images of pastrami, pastrami, corned beef sandwiches and cheesecakes is not breach of the Agreement with Defendants.

221.    Given Defendants' egregious conduct, Plaintiff is also entitled to collect punitive damages based on Defendants' bad faith activities.

### FOURTH CAUSE OF ACTION
### Breach of Contract

222.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

223.    The Defendants entered into a Settlement Agreement with the Carnegie Diner & Cafe that by its express terms inured to the benefit of Plaintiff.

224.    The Plaintiff has a right to enforce the Agreement in light of the Assignment and the assumption thereof.

225.    Plaintiff also has the right to enforce the Agreement as an affiliate of Carnegie Diner & Cafe.

226.    Plaintiff is a beneficiary of the Agreement.

227.    Plaintiff has succeeded to all rights and obligations under the Agreement.

228.    Paragraph 9 of the Agreement provides that the Agreement is binding upon and inures to the benefit of the parties and their respective affiliates, successors and assigns.

229.    The language of the Agreement clearly evidences an intent to permit enforcement by Plaintiff.

230.    Carnegie Diner & Cafe substantially and materially performed under the Agreement.

231.    Plaintiff has substantially and materially performed under the Agreement.

232.    The Agreement expressly consented to Plaintiff's use of the "Carnegie Diner & Café" Mark in logos, provided that Plaintiff complied with specific restrictions relating to font, color, and stylization.

233.    The logo approved under the Agreement consists solely of the wording "Carnegie Diner & Café" without any stylized font or graphic elements.

234.    The Defendants consented to the Carnegie Diner & Cafe using its brand name.

235.    The Defendants consented to the Carnegie Diner & Cafe using its brand name without geographic or territorial limitation.

236.    By consenting to such use, the Defendants acknowledged and agreed that Plaintiff may use the Mark in non-stylized form, so long as it adhered to the agreed-upon color and font limitations.

237.    Since entering the Agreement, Carnegie Diner & Cafe has only used the Mark in non-stylized form in conformance with the agreed-upon color and font limitations.

238.    The Plaintiff has only used the Mark in non-stylized form in conformance with the color and font limitations set forth in the Agreement.

239.     By now bringing this action to challenge Plaintiff's right to use or register the Mark despite Plaintiff's compliance with the Agreement's terms, Defendants have materially breached the Agreement.

240.     Defendants have refused to acknowledge Plaintiff's rights under the Agreement, including the applicability of Paragraph 9.

241.     Defendants have improperly challenged Plaintiff's standing to invoke protections and rights conferred by the Agreement.

242.     By refusing to recognize Plaintiff's status as a beneficiary and assignee of the Agreement, the Defendants have materially breached the Agreement.

243.     By disputing the application of Paragraph 9 of the Agreement, the Defendants have materially breached the Agreement.

244.     As a direct and proximate result of Defendants' breach, Plaintiff suffered and will continue to suffer damages and irreparable harm, including legal expenses and disruption of its business operations.

245.     By virtue of the foregoing, Plaintiff is entitled to actual, compensatory and consequential damages, together with interest and costs, and any other relief the Court deems just and proper.

### FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

246.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

247.     Defendants entered into an Agreement with the Carnegie Diner & Cafe that inured to the benefit of Plaintiff to resolve Defendants' putative objections to the branding being used by the Carnegie Diner & Cafe restaurants.

248.    The Agreement between the parties was intended to fully and finally resolve the dispute concerning Plaintiff's use of the "Carnegie Diner & Café" mark.

249.    The Agreement between the parties was intended to allow the parties to coexist in the marketplace without further interference.

250.    The Agreement specifically addressed the use and registration of logo marks and did not restrict, or otherwise limit Carnegie Diner & Cafe or the Plaintiff's use or registration of word marks or standard character marks.

251.    Accordingly, the Mark at issue—being a standard character mark—falls outside the restrictions set forth in the Agreement.

252.    Defendants now claim that because the standard character mark is not explicitly referenced in the Agreement, they are free to challenge its registration based on alleged prior rights or likelihood of confusion.

253.    This position is directly contrary to the spirit and purpose of the Agreement and constitutes a breach of the implied covenant of good faith and fair dealing.

254.    Plaintiff reasonably expected, based on the terms of the Agreement, that it would remain free to use and register word marks or standard character marks without interference by Defendants.

255.    By filing the Petition against the Mark, Defendants acted in bad faith and breached the implied covenant of good faith and fair dealing by attempting to improperly expand the scope of the Agreement, assert rights they did not bargain for, and interfere with the reasonable contractual expectations of the Carnegie Diner & Cafe and the Plaintiff, for which the Agreement inured to its benefit.

256.    By filing the Petition against the Mark, Defendants have frustrated the purpose of the contract by intentionally and deliberately acting and proceeded in bad faith and have breached its duty of good faith and fair dealing owed to the Carnegie Diner & Cafe and the Plaintiff, for which the Agreement inured to its benefit.

257.    Defendants are acting in an attempt to restrict Plaintiff's freedom to act outside the scope of the Agreement and have breached their duty of good faith and fair dealing owed to the Carnegie Diner & Cafe and the Plaintiff, for which the Agreement inured to its benefit.

258.    Defendants' conduct is a calculated effort to deprive Plaintiff of the benefit of the bargain of the Parties' Agreement.

259.    Defendants' conduct is a calculated effort to deprive Plaintiff of the right to operate and build its brand without further harassment from Defendants over rights that were knowingly addressed and settled.

260.    Defendants' actions demonstrate that they never intended to honor the finality of the settlement memorialized by the Agreement.

261.    Defendants' conduct is incompatible with the reasonable expectations of the parties.

262.    Defendants' conduct violates the implied covenant of good faith and fair dealing inherent in every contract under New York law.

263.    As a result of Defendants' conduct, Plaintiff has been forced to expend significant time and resources defending against a baseless Petition.

264.    As a result of Defendants' conduct, the Plaintiff's ability to operate and expand its business has been harmed.

265.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages and irreparable harm, including but not limited to legal expenses, disruption to its business operations, and impairment of its rights to use and register its mark.

266.    Accordingly, and by virtue of the foregoing, Plaintiff is entitled to actual, compensatory and consequential damages, together with interest and costs, and any other relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1.  For an order and judgment Declaring that:

  a)  the Mark and any of its variations are owned exclusively by Plaintiff;

  b)  Plaintiff has exclusive rights in the Mark and its variations in connection with the services covered by its registration;

  c)   Plaintiff's use and registration of the Mark and its variations does not infringe on Defendants' trademark rights and is not likely to cause confusion with any of Defendants' marks under the Lanham Act ;

  d)  there was no fraud in Plaintiff's application with the USPTO for the registration of the Mark;

  e)  no likelihood of confusion with Defendants' marks arises through Plaintiff's use and registration of the Mark;

  f)  no likelihood of confusion with Defendants' marks arises through Plaintiff's use of "Carnegie Hospitality" and "Carnegie Catering" marks;

  g)  the Plaintiff's Mark does not cause dilution of Defendants' alleged marks;

  h)  the Plaintiff's Mark does not make any false suggestion or connection with Defendants' marks;

    i)      the Plaintiff's use of pictures, photographs and graphic designs depicting pastrami, pastrami sandwiches, corned beef sandwiches and cheesecakes does not constitute infringement of Defendants' trademarks, does not dilute Defendants' trademarks and does not make any false suggestion or connection with Defendants' marks or brand.

    j)      Plaintiff has not and is not infringing Defendants' intellectual property rights;

    k)      Plaintiff's sales are not connected to or associated with any intellectual property allegedly owned by Defendants;

    l)      registration of the Plaintiff's Mark is in full force and effect and is not void, ab initio;

    m)      Plaintiff's use and registration of the Mark is not in breach of the Agreement with Defendants; and,

    n)      that all allegations contained in Defendants' TTAB Petition are without merit.

    o)      Plaintiff's use of the "Carnegie Hospitality" and "Carnegie Catering" marks is not breach of the Agreement with Defendants

    p)      Plaintiff's use of pictures, photographs and graphic designs depicting pastrami, pastrami sandwiches, corned beef sandwiches and cheesecakes is not breach of the Agreement with Defendants;

    q)      Plaintiff's sale of pastrami, pastrami sandwiches, corned beef sandwiches and cheesecakes is not breach of the Agreement with Defendants;

    r)      Plaintiff's business expansion in other locations is not breach of the Agreement with Defendants;

    s)      Plaintiff's use of the words "famous" and "landmark" is not breach of the Agreement with Defendants.

2.   Awarding Plaintiff the following damages:

    a)      Actual, compensatory and consequential damages;

    b)      All exemplary and/or punitive damages to which Plaintiff is entitled under statutory or common law;

    c)      Pre- and post-judgement interest according to law;

d)      Plaintiff's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117, and/or

any other applicable statute, together with the costs and disbursements of this action; and

3.   Awarding Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the fullest extent permitted by law.

Dated: New York, New York
       June 10, 2025

                                        Respectfully submitted,

                                        **PARDALIS & NOHAVICKA, LLP**

                            **By:**     /s/*Eleni Melekou*
                                        Eleni Melekou, Esq.
                                        *Attorneys for Plaintiff Carnegie Hospitality LLC*
                                        950 Third Avenue, 11th Floor
                                        New York, NY 10022
                                        Tel.: (212) 213-8511
                                        Fax: (718) 777 0599
                                        eleni@pnlawyers.com